**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

DAVID SCOTT GULICK,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C13-4038-MWB

**REPORT AND
RECOMMENDATION**

―――――――――――

## *TABLE OF CONTENTS*

I.     **INTRODUCTION**............................................................................2

II.    **BACKGROUND**...........................................................................2

III.   **DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF** .........3

IV.   **SUMMARY OF ALJ'S DECISION** .....................................................5

V.    **THE SUBSTANTIAL EVIDENCE STANDARD**...................................14

VI.   **ANALYSIS** ...............................................................................15

     A.    *Did The ALJ Err In Giving Little Weight To Ms. Holmes's
           Opinion?*...........................................................................16

          1.   *Applicable Standards* ....................................................16

          2.   *Analysis Of The ALJ's Reasons* .....................................19

          3.   *Res Judicata* ..............................................................21

     B.    *Did The ALJ Err In Formulating Gulick's RFC?*...........................23

     C.    *Did The ALJ Err In Finding That Gulick Is Capable Of
           Performing Other Work?*....................................................26

VII.  **CONCLUSION AND RECOMMENDATION**.......................................32

# I.    INTRODUCTION

Plaintiff David Gulick seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Social Security Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act).   Gulick contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled. For the reasons that follow, I recommend that the decision be reversed and remanded for further proceedings.

# II.    BACKGROUND

Gulick was born in 1966 and was 42 years old on his alleged disability onset date of June 5, 2009.[1]  AR 13, 22.  He has a high school diploma and past relevant work as a box sealing operator and a cook helper.  AR 22, 37, 253.  He protectively filed his applications for DIB and SSI on June 9, 2009.  AR 11.  The applications were denied initially and on reconsideration.  *Id.*  Gulick then requested a hearing, which was conducted October 12, 2011, by Administrative Law Judge (ALJ) G. Roderic Anderson.  *Id.*  Gulick testified during the hearing, as did a vocational expert (VE). AR 30-78.  The ALJ issued a decision denying Gulick's application on October 26, 2011.  AR 11-24.  On March 28, 2013, the Appeals Council denied Gulick's request for review.  AR 1-3.   As such, the ALJ's decision is the final decision of the Commissioner.  AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

On May 3, 2013, Gulick commenced an action in this court seeking review of the ALJ's decision.  This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case.  The parties have briefed the issues and the matter is now fully submitted.

---

[1] Gulick originally alleged an onset date of June 1, 2003, but later agreed to amend that date due to the *res judicata* effect of a decision denying his previous claim.  AR 11, 40-42.

## III.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing,

and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own

medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. SUMMARY OF ALJ'S DECISION

The ALJ made the following findings:

    (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

    (2)    The claimant has not engaged in substantial gainful activity since June 5, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    (3)    The claimant has the following severe impairments: insulin dependent diabetes mellitus, type II; diabetic

neuropathy, bilateral feet; bilateral cataract, right worse than left; morbid obesity; residuals of four-vessel coronary artery bypass graft; and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) but with additional limitations. He is able to perform work that allows for a sit/stand option and does not require more than occasional crawling, squatting or kneeling; repetitive bending, twisting or turning; or any climbing of stairs or ladders. The claimant is able to work in an environment free from exposure to dust, smoke and fumes. He must not operate machinery or motor vehicles, work around moving machinery, or at unprotected heights. He is able to do work that does not require frequent detailed reading. Due to his severe mental impairments, the claimant has moderate limitation in the ability to understand, remember and carry out detailed instructions and to have frequent contact with the public and coworkers. Moderate impairment is defined as having intermittent limitation in that area but with performance in that area still being satisfactory.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on June 17, 1966 and was 42 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)     The claimant has not been under a disability, as defined in the Social Security Act, from June 5, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 11-24. At Step Two, the ALJ found the following claimed impairments to be severe, as they cause more than minimal limitations in Gulick's ability to perform work-related activities: insulin dependent diabetes mellitus, type II; diabetic neuropathy, bilateral feet; bilateral cataract, right worse than left; morbid obesity; residuals of four-vessel coronary artery bypass graft; and depressive disorder. AR 13-14. However, the ALJ determined that other claimed impairments were non-severe, finding that the evidence does not demonstrate that they cause more than minimal limitations. AR 14. Those impairments are obstructive sleep apnea, hypertension, a previous myocardial infarction (MI) and diabetic retinopathy. *Id.* Gulick disputes the ALJ's conclusion that these claimed impairments are non-severe. He also contends that even if the impairments are non-severe, the ALJ erred in not considering them while determining Gulick's RFC.

At Step Three, the ALJ found that none of Gulick's impairments, individually or in combination, met or equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 14. The ALJ analyzed two neurological listings (11.14 and 11.17) and two mental-disorder listings (12.04 and 12.06). AR 14-16. In his

brief, Gulick does not take issue with the ALJ's findings concerning the neurological listings. As such, I will not address the ALJ's analysis of those listings. Gulick does, however, contend that the ALJ erred in concluding that he is not disabled pursuant to Listings 12.04 and 12.06.

With regard to those listings, the ALJ first analyzed the "paragraph B" criteria, noting that to satisfy these criteria the impairments must cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.[2] *Id.* A "marked" limitation is one that is more than moderate but less than extreme. *Id.* The ALJ found that Gulick has mild restrictions concerning activities of daily living, mild difficulties in social functioning and moderate difficulties with regard to concentration, persistence or pace. AR 15-16. The ALJ also found that Gulick had experienced no episodes of decompensation which have been of extended duration. AR 16. Therefore, the ALJ found the paragraph B criteria were not satisfied. *Id.* He also stated that he had considered the "paragraph C" criteria and that the evidence failed to establish those criteria, as well. *Id.* In making these findings, the ALJ expressly rejected an opinion submitted by Lois Holmes, a social worker. *Id.* The ALJ acknowledged that her opinion, if adopted, "would direct a finding that [Gulick] meets Listings 12.04 and 12.06." *Id.* I will discuss the ALJ's reasons for rejecting Ms. Holmes's opinions *infra*, in connection with his Step Four analysis.

---

[2] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1. Repeated episodes of decompensation, each of extended duration, means 3 episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If the episodes of decompensation are more frequent and of shorter duration or less frequent and of longer duration, the Commissioner must "use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

At Step Four, the ALJ provided a RFC assessment and found that Gulick had the RFC to perform sedentary work[3] with additional limitations. AR 17. The ALJ determined that the work would have to allow for a sit/stand option and not require more than occasional crawling, squatting or kneeling; repetitive bending, twisting or turning; or any climbing of stairs or ladders. *Id.* Moreover, the work environment would have to be "free from exposure to dust, smoke and fumes" and the work must not require Gulick to operate machinery or motor vehicles, work around moving machinery, or at unprotected heights. *Id.* As a further limitation, the ALJ found that the work must not require frequent detailed reading. *Id.* Finally, the ALJ noted that because of Gulick's severe mental impairments, he has moderate limitation in the ability to understand, remember and carry out detailed instructions and to have frequent contact with the public and coworkers. *Id.* According to the ALJ, this means Gulick would have "intermittent limitation in that area but with performance in that area still being satisfactory." *Id.*

In explaining these findings, the ALJ first addressed the credibility of Gulick's statements concerning the disabling effects of his impairments. *Id.* He noted that Gulick claims to be in "constant, widespread pain that is only made worse by any form of activity," with his primary problems being "chest pain, bilateral arm and foot neuropathic pain, shortness of breath (with minimal exertion), poor grip strength and difficulty maintaining position *Id.* He referenced the relevant factors for weighing a claimant's credibility and concluded that Gulick's statements were not credible to the extent that they were inconsistent with the RFC determination. *Id.* The ALJ provided the following reasons for this finding: (1) Gulick's allegations of total disability are inconsistent with the objective medical evidence, (2) the absence of more-aggressive

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a).

treatment indicates that Gulick's symptoms are not as severe as alleged, (3) Gulick's reports concerning his daily activities suggest that he is not as impaired as he claims to be and (4) the medical opinions, as weighted by the ALJ, do not support Gulick's allegations.  AR 18-22.

With regard to the medical evidence and medical opinions, the ALJ first noted that Gulick suffered a myocardial infarction that required four-vessel bypass surgery in 2003.  AR 18.  However, the medical evidence indicates no visits to a cardiologist since at least October 2006.  *Id.*  Instead, since that time Gulick has been followed by a general practitioner, Jonathan Taylor, D.O., and other general practitioners.  *Id.*  According to the ALJ, Dr. Taylor's records "chronicle a rather stable baseline of symptoms" except for "fluctuating and poorly controlled blood sugars."  *Id.*  The ALJ then described other symptoms and complaints reflected in Dr. Taylor's records, including "some mention of ongoing, low-level, left-sided chest pain."  *Id.*  The ALJ found that the records do not reveal any severe symptoms and contained "little mention of bodily pain."  AR 18-19.  He noted that in April 2009, Dr. Taylor reported that Gulick has difficulty walking without pain and that this is made worse by exercise.  AR 19.  Dr. Taylor then stated that "manual labor would be difficult for him" but "I think he is smart enough to attempt to train in something else."  AR 19, 259.

The ALJ then discussed a report prepared by Jeffrey Krohn, M.D., after a consultative examination of Gulick in August 2009.  AR 19.  Dr. Krohn found severe limitations to Gulick's range of motion regarding his shoulders, knees, elbows and wrists.  AR 19, 451.  He also found only "fair" upper extremity strength and grip strength.  *Id.*  In his narrative report, Dr. Krohn described Gulick as "a morbidly obese gentleman with numerous complaints."  AR 454.  He then stated that Gulick "seems to be trying to convince me how diminished his abilities are."  *Id.*  According to Dr. Krohn, Gulick's "gait is normal when he thinks I am not watching but can bearly [sic] walk when I am."  *Id.*  Dr. Krohn noted that Gulick uses no assistive devices and described instances in which he observed Gulick making movements that were

seemingly inconsistent with his claims of immobility. *Id.* Based on these factors, Dr. Krohn concluded that Gulick's pain "may be real" but his "decreased functioning is questionable." *Id.*

With regard to Gulick's prior myocardial infarction, Dr. Krohn noted that Gulick worked for three years after that event and had not seen a cardiologist for the past two years. *Id.* He also stated that Gulick reported no restrictions placed on him by any cardiologist and concluded that his coronary history is not an impairment. *Id.* As for other claimed, physical impairments, Dr. Krohn (a) found that Gulick's vision problems were secondary to cataracts, a "curable problem," (b) determined that diabetes is only a "minor impairment" for Gulick and (c) found that Gulick's issues with sleep apnea could be resolved with a CPAP machine. *Id.* Dr. Krohn did, however, indicate agreement with Dr. Taylor that Gulick would have difficulty with manual labor due to diabetic neuropathy. *Id.*

Dr. Krohn opined that mental illness is Gulick's "most debilitating problem." *Id.* He noted that because he is not a psychologist, he "cannot determine to what degree he would be impaired from this." *Id.* He then concluded as follows:

> Physically, most of his problems are manageable with therapy, medication, and reconditioning. Since his myocardial infarction he has become severely deconditioned, morbidly obese and poorly motivated. With education and encouragement I believe he could become a productive member of society. However, I don't know how this could happen without medical assistance such as Medicaid or insurance. He will not be able to achieve the level of care and treatment necessary.

AR 455.

The ALJ next discussed the opinion provided by social worker Lois Holmes in April 2009. AR 20. Ms. Holmes found that Gulick met the "paragraph A," "paragraph B" and "paragraph C" criteria for listings 12.04 and 12.06. AR 20, 522-23. She also found Gulick to have numerous other "marked" impairments in basic

mental activities and stated that he would miss more than four unscheduled days of work each month because of his impairments. AR 20, 520-23.

The ALJ afforded little weight to Ms. Holmes's opinion. AR 20. He noted that while she is not an acceptable medical source, her opinion is entitled to weight pursuant to Social Security Ruling 06-03p. *Id.* However, in weighing the opinion the ALJ found that (a) "the severity of her alleged impairments is largely absent among her own treatment notes" and (b) "the preponderance of the remainder of the medical evidence is conspicuously absent indications that he is so limited." *Id.* He determined, instead, that an opinion provided by an examining psychologist, Michael Baker, Ph.D., was entitled to greater weight. *Id.*

Dr. Baker evaluated Gulick in July 2009. AR 406-08. He diagnosed depressive disorder, not otherwise specified, and also noted a "rule out" diagnosis of personality disorder with schizoid or avoidant personality traits. AR 20, 408. He concluded that Gulick is able to understand and remember instructions, procedures and locations. AR 407-08. He further found that Gulick's "maintenance of attention, concentration and pace are adequate for noncomplex type tasks." AR 408. He found no reason why Gulick would not be able to interact appropriately with supervisors, coworkers and the public and that Gulick could use "adequate judgment in responding to change in the workplace." *Id.* He assigned Gulick a global assessment of functioning (GAF) score of 50.[4]

The ALJ also discussed opinions provided by state agency consultants who reviewed Gulick's records. AR 22. With regard to physical impairments, the consultants concluded that Gulick retained the ability to perform light exertional work.

---

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 34.

*Id.* The ALJ gave these opinions only some weight, stating that he was giving Gulick the benefit of the doubt by finding him to be limited to sedentary work. *Id.* As for mental impairments, the ALJ gave great weight to the opinions of the psychological consultants, finding their opinions to be consistent with the evidence as a whole and with Dr. Baker's opinion. *Id.*

In short, the ALJ found that the medical evidence as a whole does not support a finding that Gulick's physical and mental impairments are greater than those found by Dr. Krohn and Dr. Baker. AR 20-21. This finding was central to the ALJ's determination that Gulick's allegations of disabling limitations are not fully credible. AR 21. The ALJ also found Gulick's own description of his daily activities to be inconsistent with his allegations. *Id.* He noted that Gulick reported the ability to take care of his own daily needs and those of his mother, with whom he lives. AR 21, 201-15, 227-34. For example, Gulick shops for himself and his mother, completes basic household chores and cares for his own hygiene. AR 21-22.

Further, the ALJ observed that the courses of treatment recommended by Gulick's physicians were not consistent with Gulick's allegations of disabling impairments. AR 22. With regard to mental impairments, the ALJ noted that routine psychotropic medications were prescribed at routine dosages, with no indication in the records that the medications were ineffective or caused undesirable side effects. AR 20-21. As for physical impairments, the ALJ deemed the recommended therapies to be conservative and found that even though Gulick did not strictly adhere to the recommendations, his condition did not deteriorate. *Id.* According to the ALJ, the lack of aggressive treatment provided another reason to reject Gulick's allegations. *Id.*

Finally, the ALJ discussed a third-party function report provided by Gulick's mother. AR 21. The ALJ noted that she made statements that described symptoms similar to those alleged by Gulick. *Id.* The ALJ gave some weight to the statements but found them to be less-than-fully credible for the same reasons he provided with regard to Gulick's own allegations. *Id.*

After determining Gulick's RFC, the ALJ found that Gulick is unable to perform any past relevant work because all such work requires abilities that exceed the RFC. AR 22. The ALJ then moved to Step Five and considered whether Gulick can perform other work that exists in significant numbers in the national economy. AR 23. Relying on the VE's testimony, the ALJ found that he can. AR 23. As such, the ALJ concluded that Gulick is not disabled within the meaning of the Act. AR 24.

## V. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in

support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VI.    ANALYSIS

Gulick argues that the ALJ's decision must be reversed because it is not supported by substantial evidence in the record as a whole. In support of this argument, he contends (1) the ALJ failed to give appropriate weight to the opinion of Lois Holmes, his treating social worker, and failed to provide adequate reasons for discounting that opinion: (2) the ALJ's determination of Gulick's RFC was flawed

because the ALJ improperly weighted the medical opinion evidence and posed improper hypothetical questions to the VE and (3) the VE's testimony does not support a finding that there are jobs in the national economy that Gulick can perform. Doc. No. 9 at 2. I will first address the ALJ's evaluation of Ms. Holmes's opinion. I will then address the RFC determination and the issue of whether the VE's testimony supports the ALJ's finding that Gulick is able to perform other work.

## A.  Did The ALJ Err In Giving Little Weight To Ms. Holmes's Opinion?

### 1.  Applicable Standards

In evaluating a claim for DIB or SSI, the ALJ is required to consider all relevant evidence, including medical records and medical opinions. *See* 20 C.F.R. §§ 404.1513, 404.1520, 404.1520b, 404.1527, 416.913, 416.920 and 416.920b. With regard to medical opinions, the Commissioner's regulations give great deference to those provided by treating health care providers:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) [emphasis added]. This means a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

When a treating provider's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). However, an opinion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

Here, Lois Holmes is a licensed social worker who was Gulick's mental health therapist for over three years. AR 59, 329-404, 475-97. While there is no doubt that she is a treating source, the regulations distinguish opinions provided by licensed physicians and psychologists from those provided by physicians' assistants, nurse practitioners, social workers and other sources. 20 C.F.R. §§ 404.1513 and 416.913. The former are "acceptable medical sources" while the latter are not. *Id.; see also Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007); *Tindell v. Barnhart*, 444 F.3d 1002, 1004-05 (8th Cir. 2006). The opinions of treating, but non-acceptable, medical sources are not entitled to controlling weight. 20 C.F.R. §§ 404.1513(d)(1) and

416.913(d)(1); *see also Lacroix v. Barnhart*, 465 F.3d 881, 885–86 (8th Cir. 2006). However, the Commissioner has stated that such opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Social Security Ruling (SSR) 06–3p (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1513 and 416.913; *Sloan*, 499 F.3d at 888-89. The standards for evaluating these opinions are as follows:

> Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions."

SSR 06–3p. The ALJ is required to explain his or her analysis:

> [T]he adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.*

### 2.    *Analysis Of The ALJ's Reasons*

Here, as noted above, Ms. Holmes provided a written opinion indicating that Gulick met the criteria for Listings 12.04 and 12.06. Indeed, the ALJ acknowledged that adopting Ms. Holmes's opinion would direct a finding that Gulick is disabled pursuant to those listings. AR 16. However, the ALJ found that her opinion was entitled to little weight. AR 20. He provided two reasons: (a) the limitations contained in Ms. Holmes's opinion are not supported by her treatment notes and (b) the preponderance of the medical evidence does not indicate that Gulick is as limited as suggested by the opinion. *Id.* Gulick argues that these are not good reasons supported by substantial evidence in the record.

*Treatment Notes*. Gulick contends that the ALJ misconstrued the meaning and purpose of Ms. Holmes's treatment notes. Doc. No. 9 at 8-9. He asserts that the notes of Gulick's visits "are not in a format that records and reports weekly symptoms or limitations." *Id.* at 8. He further states that the treatment notes could not possibly detail everything said during an hour-long session. *Id.* at 9. Thus, according to Gulick, it is misleading to compare Ms. Holmes's treatment notes to her written opinion. Moreover, he contends, there are comments in certain notes that do support the significant limitations Ms. Holmes set forth in her opinion. *Id.* at 9-10.

The Commissioner responds by pointing out that Ms. Holmes's opinion was issued two months before the alleged onset date in this case and, indeed, during a

period of time in which Gulick has already been determined (by a prior final decision) to be *not* disabled. Doc. No. 10 at 17. The Commissioner also takes issue with Gulick's suggestion that Ms. Holmes's treatment notes do not provide a fair depiction of what may have happened during each session. The Commissioner states that it is pure speculation to argue that Gulick's symptoms and limitations were more-severe than Ms. Holmes recorded. *Id.* Finally, the Commissioner points to various portions of the treatment notes that allegedly support the ALJ's finding that the notes are inconsistent with Ms. Holmes's opinion. *Id.* at 17-18.

For starters, I agree with the Commissioner's refutation of Gulick's argument that the treatment notes should be read to say more than they really do. Indeed, the argument is absurd. The ALJ must consider the actual record, not a fantasized concept of what the record might be. Moreover, Gulick's criticism of the ALJ for relying on Ms. Holmes's treatment notes flatly ignores the fact that Ms. Holmes herself wrote "See Progress notes" when asked to explain her written opinion. AR 521. The form she completed invited her to "relate your observations of clinical signs and symptoms," to "explain any significant limitations in functioning" and to "make any additional comments you may want to offer." *Id.* If Ms. Holmes based her opinion on something other than her treatment notes, she had the opportunity to say so. By writing only "See Progress notes," Ms. Holmes effectively precluded Gulick's current argument that it was unfair for the ALJ to consider whether the notes are consistent with her opinion.[5]

Having carefully reviewed all of the treatment notes at issue, I cannot find that the ALJ erred in concluding that they do not support Ms. Holmes's written opinion. As the parties demonstrated in their respective briefs, it is possible to select excerpts that seemingly suggest varying severities of certain symptoms. As a whole, however, the

---

[5] For the same reason, I reject Gulick's alternative argument that the ALJ should have contacted Ms. Holmes to obtain additional information or explanation concerning the grounds for her written opinion. Ms. Holmes made it very clear that the opinion was based on the information in her treatment notes.

notes do not support Ms. Holmes's opinion that Gulick suffered from either a "severe" or "nearly complete" loss of eight separate work-related abilities, or that he had "marked" or "extreme" restrictions with regard to every factor relevant to the applicable listings. AR 520-23.

*Other Medical Evidence.* An ALJ may discount the opinion of a medical source if that opinion is inconsistent with that source's own treatment notes. *See, e.g., Halverson v. Astrue,* 600 F.3d 922, 930 (8th Cir. 2010). Because it was not error for the ALJ to find that Ms. Holmes's treatment notes are inconsistent with her written opinion, it is not necessary to devote significant analysis to the ALJ's other stated reason for discounting that opinion. Nonetheless, I note that this reason, too, is supported by substantial evidence in the record as a whole. While Gulick argues that Ms. Holmes's opinion is consistent with that of Dr. Baker, a comparison of those opinions reveals otherwise. Dr. Baker opined that Gulick could remember and understand instructions, procedures, and locations; that his attention, concentration, and pace were adequate for noncomplex tasks; and that there is no reason he would not be able to interact appropriately in a work setting. AR 407-08. This opinion is not consistent with Ms. Holmes's opinion that Gulick has such severe and marked limitations that he meets two disability listings. Similarly, the state agency consultants who reviewed Gulick's records provided opinions that are more consistent with Dr. Baker's opinion than with Ms. Holmes's opinion. AR 434, 498. In short, it was not error for the ALJ to discredit Ms. Holmes's opinion on grounds that it was inconsistent with other evidence in the record.

### 3. *Res Judicata*

While I have found that the ALJ provided good reasons, supported by substantial evidence in the record as a whole, for the limited weight afforded to Ms. Holmes's opinion, I find that there is an additional reason to uphold the ALJ's conclusion. As

noted above, the Commissioner correctly points out that Ms. Holmes wrote her opinion in April 2009. AR 523. The opinion was written in connection with Gulick's previous applications for DIB and SSI. AR 82, 88-89. Those applications were denied by a different ALJ on June 4, 2009. AR 82-91. In that prior decision, the ALJ expressly discredited Ms. Holmes's opinion for several reasons, including a finding that the opinion is inconsistent with Ms. Holmes's progress notes. AR 88-89.

Gulick has not requested that the prior, final decision be reopened but, instead, has amended his alleged onset date in this case to June 5, 2009. AR 163, 171. He now contends that the ALJ in this case improperly weighted an opinion that (a) was issued before the alleged onset date in this case and (b) was rejected by the ALJ in a prior case. While the Commissioner does not expressly argue that *res judicata* bars consideration of Ms. Holmes's opinion in this case, the law in this circuit is clear that under these circumstances, her opinion can be considered only as background information. For example, in *Robbins v. Sec'y of Health and Human Servs.*, 895 F.2d 1223 (8th Cir. 1990) (per curiam), the court addressed the impact of a prior, final decision on the evaluation of medical evidence during a subsequent claim:

> Since the first proceeding has been given *res judicata* effect in the current proceeding, the medical evidence from the first proceeding cannot be reevaluated in this proceeding. *Wilson v. Califano*, 580 F.2d 208, 211 (6th Cir. 1978). *Cf. Gavin v. Heckler*, 811 F.2d 1195, 1199–1200 (8th Cir. 1987) (ALJ could not reevaluate evidence from a prior final determination). The only exception to this ruling would be where the prior medical evidence would serve as a background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding. *Wilson*, 580 F.2d at 212. Reliance on evidence from a prior final proceeding defeats the policy of finality inherent in 42 U.S.C. § 405(h) (1982) (decisions of Secretary shall not be reviewed by another governmental body). *See Gavin*, 811 F.2d at 1200.

*Id.* at 1224. In a later case, the court explained:

> We recognize that because the ALJ did not reopen the first hearing, principles of res judicata apply. *See Robbins v. Secretary of Health and Human Services*, 895 F.2d 1223, 1224 (8th Cir. 1990) (per curiam). As

such, the medical evidence from the initial proceeding cannot be subsequently reevaluated. *Robbins*, 895 F.2d at 1224. However, Robbins explicitly states that an exception is made "where the prior medical evidence would serve as a background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." *Id.* Thus, we mention Dr. Proano's reports written prior to the first hearing as a backdrop to new evidence regarding Bladow's condition.

*Bladow v. Apfel*, 205 F.3d 356, 360 n.7 (8th Cir. 2000).

Here, there is no dispute that the ruling on Gulick's prior claim has *res judicata* effect regarding his current claim. *See, e.g.,* AR 35. Ms. Holmes's opinion was submitted, evaluated and discredited in connection with the prior claim. AR 88-89. It cannot be reevaluated in this case. It is not inadmissible, but its use in this case is limited to that of background evidence. *Robbins*, 895 F.2d at 1224. It is appropriate to consider Ms. Holmes's opinion as evidence of Gulick's condition in April 2009 for purposes of considering whether his condition has deteriorated since that time. However, the opinion cannot serve as substantive evidence supporting Gulick's claim of disability in this case.

## B.     Did The ALJ Err In Formulating Gulick's RFC?

As noted above, "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Here, Gulick contends that there is not substantial evidence in the record to support the ALJ's determination of his mental RFC.[6]

---

[6] Gulick makes no specific challenge to the ALJ's determination of his physical RFC. He generally contends that the ALJ failed to consider his non-severe impairments as part of the RFC analysis, but does not explain how that alleged error could have impacted the ALJ's

Gulick starts by addressing the ALJ's reliance on non-examining state agency psychological consultants. He points out that the opinion of a non-examining source, standing alone, normally cannot constitute substantial evidence on the record as a whole. Doc. No. 9 at 14. He also notes that under the Commissioner's regulations, the weight given to opinions from non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions." *Id.* (citing 20 C.F.R. § 416.927(c)(3)). As Gulick notes, the opinion of Dee Wright, Ph.D., is a "checklist" form opinion.[7] AR 432-49. According to Gulick:

> Dr[.] Wright offered only the explanation that Plaintiff is capable of washing his own dishes and clothing, and he can sweep his own floor and go buy groceries. **[AR: 434]** There are no other words from Dr. Wright that are explanatory.

Doc. No. 9 at 14 [emphasis of record citation in original]. This statement is incorrect. On the page Gulick cites, Dr. Wright provided other "explanatory" comments. For example, Dr. Wright summarized Dr. Baker's report of July 14, 2009, making it clear that her opinion was based, at least in part, on that report. AR 434. She also noted that Gulick "has never required inpatient psychiatric hospitalization." *Id.* Only after making these comments did Dr. Wright refer to Gulick's statements concerning his daily activities (washing dishes, etc.). *Id.* The claim that Dr. Wright provided no explanation for her opinion other than Gulick's daily activities is misleading, at best.

Of course, this does not mean Dr. Wright's explanation is good, just that it is more comprehensive than Gulick has portrayed. Clearly, if the ALJ's mental RFC determination was based solely on Dr. Wright's opinion, that determination would be

---

physical RFC findings. In fact, the ALJ expressly acknowledged that he was required to consider all impairments, even those that are not severe, in formulating Gulick's RFC. AR 13. Based on my review of the record I find that the ALJ's assessment of Gulick's physical RFC is supported by substantive evidence.

[7] The other state agency psychological consultant opinion referenced by the ALJ is a one paragraph opinion by Scott Shafer, Ph.D., that simply reaffirms Dr. Wright's opinion. AR 498.

on thin ice. However, it is clear from both the timing and the express reference that Dr. Wright essentially adopted Dr. Baker's findings. Dr. Wright prepared her opinion just two weeks after Dr. Baker wrote his report. AR 406-08, 434. Because Dr. Baker actually examined Gulick, and provided a detailed written opinion to which the ALJ afforded great weight, the real issue is whether that opinion provides substantial evidence to support the ALJ's mental RFC findings.

I find that it does. Dr. Baker made no findings suggesting that Gulick's mental impairments are so severe as to preclude any employment. Indeed, Dr. Baker determined that Gulick could remember and understand instructions, procedures, and locations; that his attention, concentration, and pace were adequate for noncomplex tasks; and that there is no reason he would not be able to interact appropriately in a work setting. AR 407-08. The ALJ, in describing Gulick's mental RFC, stated that Gulick "has moderate limitation in the ability to understand, remember and carry out detailed instructions and to have frequent contact with the public and coworkers." AR 17. The ALJ defined a "moderate limitation" to mean "having intermittent limitation in that area but with performance in that area still being satisfactory." *Id.* The ALJ's mental RFC determination is not inconsistent with Dr. Baker's narrative findings.

Gulick contends, however, that the mental RFC determination does not adequately account for the fact that Dr. Baker assigned a GAF score of 50. AR 408. As noted above, a GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational or school functioning. DSM-IV at 34. According to Gulick, a GAF score of 50 shows that the ALJ understated his mental impairments.

The Social Security Administration has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements in our mental disorders listings." *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed Reg. 50,746, 50,764-65, 2000 WL 1173632 (August 21, 2000). Thus, while GAF scores are relevant and should be considered, they are "not essential

to the accuracy of an RFC determination." *Earnheart v. Astrue*, 484 Fed. Appx. 73, 75 (8th Cir. 2012) (citing *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010)).

Nonetheless, it is error for an ALJ to fail to consider or discuss a consistent history of GAF scores below 50. *See, e.g., Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (only 4 out of 21 GAF scores were over 50 during a 6-year period). However, that is not the situation here. Gulick relies on a single score of 50. That score, when combined with the extensive narrative explanation Dr. Baker provided in his report, does not demonstrate that the ALJ erred in determining Gulick's mental RFC. Having already determined that it was proper for the ALJ to discredit Ms. Holmes's opinion, I find that Dr. Baker's report, along with the other evidence of record cited by the ALJ, provides substantial evidence supporting the ALJ's conclusions.

## C.    *Did The ALJ Err In Finding That Gulick Is Capable Of Performing Other Work?*

So far I have found that the ALJ's determination of Gulick's RFC is supported by substantial evidence in the record. Based on that RFC, the ALJ found at Step Four that Gulick is not capable of performing past relevant work. AR 22. He then found, at Step Five, that Gulick can perform various other jobs that exist in the national economy. AR 23-24. This finding was based on the VE's answers to various hypothetical questions. *Id.* Gulick correctly notes that when a hypothetical question fails to include all relevant impairments, the VE's answer to that question does not constitute substantial evidence. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Indeed, testimony from a VE is "substantial evidence" only when based on a correctly-phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies. *Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 2000).

Here, Gulick complains primarily about the questions and answers concerning the "sit/stand" option. As noted above, the ALJ included in Gulick's RFC a limitation that Gulick could perform "work that allows for a sit/stand option." AR 17. In answering the ALJ's hypothetical questions that included a sit/stand option requirement, the VE testified that Gulick could perform unskilled, sedentary work such as addresser, document preparer and "cut and paste for press clippings." AR 70-72. The VE then provided the estimate number of jobs that exist for each position, both nationally and regionally. *Id.* Next, however, the following exchange occurred during questioning by Gulick's attorney:

> Q.    All right. And does the DOT [Dictionary of Occupation Titles], for any of those jobs, list the - well the - does it include a limitation that [sic] the sit/stand option?
>
> A.    No, it doesn't.
>
> Q.    And is it true that generally unskilled labor does not allow for sit/stand option?
>
> A.    That is correct.

AR 73-74. This prompted the ALJ to ask additional questions:

> Q.    With that understanding, Mr. Shill, are there still jobs in the national or regional economy -- well, are those jobs still available in the national or regional economy with a sit/stand option?
>
> A.    Yes, they are, Your Honor.
>
> Q.    Okay. Now the sit/stand option is not discussed or provided in the Dictionary of Occupational Titles, is that right?
>
> A.    Well it is under sedentary is that a sit/stand option.
>
> Q.    Is that a person can sit six hours a day and not to exceed one-third of the day for standing.
>
> A.    Okay. So they can get up and down –

A.    Correct.

Q.    and generally at their –

A.    At their leisure. What they need to do quite well.

Q.    -- at will.

AR 74.  Gulick's attorney then asked for additional clarification:

Q.    Okay. Is the sedentary base significantly compromised?

A.    I don't understand the question.

Q.    Okay. Do [sic] it preclude a lot, the sit/stand option, does it preclude quite a bit of sedentary work?

A.    All sedentary work requires a person that will not exceed one-third of the day for a standing option.

Q.    Okay. But the sitting and –

A.    As opposed to a light position which would require at least a six hour stand position.

Q.    Okay. The sit/stand at leisure though?

A.    That is correct.

Q.    Okay. Do all sedentary jobs allow that?

A.    Please refine your question.

Q.    Do all sedentary jobs allow a sit/stand option?

A.    According to the DOT, yes. But it would depend on the particular employer you're talking to.

Q.    Okay. Can you tell me where you're referring to in the DOT?

A.     In the DOT, under the classification of what's a sedentary position.

Q.     Okay. It says it allows for a sit/stand option at will?

A.     Not, well, it does not. It just says the position should not be more than one-third of the day.

Q.     All right. But I'm asking about the sit/stand at will.

A.     Right. It does not specifically say that. No, it does not.

Q.     All right. So, in fact, a lot of sedentary job would be precluded then? Is that right?

A.     Possibly. But I can't give you an exact number.

Q.     Okay. Thank you.

AR 75-76.  The ALJ then concluded by asking:

> Q.     Okay. Mr. Shill, so what you're saying is you're relying on the definitions.
>
> A.     Correct. Of a sedentary positions, correct. Outlined by the Dictionary of Occupational Titles.
>
> Q.     Okay. And is the jobs that you've described would met [sic] the hypothetical question that was given and which resulted in the jobs that you listed?
>
> A.     That is correct.

AR 76.  The ALJ interpreted this testimony to mean "that while the DOT does not include in its definition of sedentary work the 'sit/stand' option, that these jobs exist in the stated numbers inclusive of that allowance."  AR 23.  Gulick, however, contends that the testimony does not support the ALJ's interpretation.  He states that testimony does not provide "competent evidence of any jobs that Plaintiff can perform if he is functionally limited as described by the ALJ's determined RFC."  Doc. No. 9 at 16-17.

Once a claimant demonstrates he or she is unable to do past relevant work, the burden shifts to the Commissioner to produce evidence that other work exists in substantial numbers in the national economy that a person with the claimant's RFC and vocational skills can perform. *See, e.g., Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000). The Commissioner does not dispute this burden. *See* Doc. No. 10 at 24. Thus, the question is whether the VE's testimony satisfied the Commissioner's burden of production and, thereby, supported the ALJ's finding that "there are jobs that exist in significant numbers in the national economy that [Gulick] can perform." AR 23. I find that it does not.

For starters, the ALJ was less-than-clear about the meaning of a "sit/stand" option. He did not define the concept when he first introduced it into a hypothetical question. AR 70. He later clarified the requirement to mean the employee can "get up and down . . . and generally at their . . . at will." AR 74. This made it clear that the ALJ was asking about unskilled, sedentary positions in which an employee would be permitted to change positions between sitting and standing as often as necessary. AR 70-71, 74. And, of course, those positions would have to accommodate the other limitations included in the ALJ's hypothetical. AR 70-71.

After the VE gave testimony about three qualifying positions, including the numbers of such positions in the national and regional economy, the VE acknowledged that none of those positions, as defined by the DOT, include a sit/stand option. AR 73. He further admitted that "generally unskilled labor does not allow for a sit/stand option." AR 74.

Upon follow-up questioning by the ALJ, the VE stated that the DOT's definition of a sedentary job provides that an employee may sit for at least six hours per day, with standing being required for up to one-third of the day.[8] AR 74. He then admitted that

---

[8] The DOT definition is as follows:

this means the employee cannot be required to stand for more than one-third of the day and acknowledged that this is different from allowing an employee to sit or stand at will. AR 75-76. He testified that the DOT definition does not say that an employee in a sedentary position can sit or stand at will. AR 76. When asked if including such a requirement would preclude "a lot of sedentary jobs," he answered: "Possibly. But I can't give you an exact number." *Id.* Finally, on further examination by the ALJ, the VE confirmed that he was "relying on the definitions" in the DOT. *Id.*

This testimony is a mess, with the VE basically agreeing with whoever was asking questions at the time. Ultimately, however, the VE acknowledged that the DOT definitions for the three jobs he identified do not expressly permit an at-will, sit/stand option. AR 73. He further confirmed that a sit/stand option is "generally" not allowed for unskilled positions. AR 74. While he then attempted to equate an at-will, sit/stand option with a definition that allows a job to be considered sedentary if it does not require standing more than one-third of the work day, AR 74-76, that appears to be akin to shoving a square peg into a round hole. The fact that a sedentary job may require some standing does not establish that the employee will be free to transition from sitting to standing at the employee's option.

On this record, the Commissioner did not meet her burden of showing that other work exists in significant numbers in the national economy that a person with Gulick's RFC and vocational skills can perform. The VE gave national and regional numbers for positions that do not expressly permit a sit/stand option, testified that unskilled

---

Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*See Dictionary of Occupational Titles*, Appendix C.

positions generally do not permit that option, and did not dispute that adding a sit/stand requirement could preclude "a lot" of sedentary jobs. AR 74-76. How many jobs are precluded? How many remain available? Is the remaining number "significant?" The record does not answer these important questions. As such, substantial evidence does not support the ALJ's finding, at Step Five, that Gulick is not disabled because he can perform other work that exists in significant numbers in the national economy.

I must recommend remand to cure this deficiency. I find it especially unfortunate that remand is necessary because of such a seemingly-basic issue. I have determined that it was appropriate for the ALJ to discredit the opinion of Gulick's treating social worker and that the ALJ's formation of Gulick's RFC was supported by substantial evidence in the record. Having correctly concluded, based on that RFC, that Gulick was not able to perform past relevant work, the only remaining issue was whether Gulick could nonetheless perform other work. The ALJ adjourned the hearing and issued a decision without obtaining a coherent answer to that question.

On remand, the ALJ is free to reassess Gulick's RFC, but is not required to do so. Based on the analysis set forth above, the only express requirement I recommend on remand is that the ALJ revisit Step Five and obtain competent evidence as to whether Gulick's RFC permits him to perform work that exists in significant numbers in the national economy.

## VII. CONCLUSION AND RECOMMENDATION

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **reversed** and this case be **remanded** for further proceedings consistent with this report. Judgment should be entered in favor of Gulick and against the Commissioner. On remand, the ALJ must revisit Step Five and obtain competent evidence as to whether Gulick's RFC permits him to perform work that exists in significant numbers in the national economy.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 17th day of January, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE